IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

**UNITED STATES OF AMERICA**,
 *Plaintiff,*

v.              Case No. 24-CR-00037-01-SRB

**JOHNSON MANGOL**,
 *Defendant.*

---

## MOTION TO SUPPRESS

---

Johnson Mangol moves this Court to suppress the evidence derived from the unlawful search of his apartment at 4801 Independence Avenue, Apartment 2E, Kansas City, Missouri on January 26, 2023, and any statements of Mr. Mangol subsequent to and based on this unlawful search. The evidence should be suppressed because the search was not supported by probable cause, the good faith exception does not apply, and thus was in violation of the Fourth Amendment to the United States Constitution. In support of this motion, Mr. Mangol states the following:

STATEMENT OF FACTS

On January 19, 2023, Detective Michael Wells of the Kansas City, Missouri Police Department submitted an Application for Search Warrant to Honorable Janette K. Rodecap, Associate Circuit Court Judge with the Sixteenth Judicial

Circuit of Missouri.[1] The application described the place to be searched as follows:

> An apartment inside of 4801 Independence Avenue, Kansas City, Jackson County, MO. It is a two story brick structure with businesses on the first floor and apartments on the second floor. Access to the apartment to be searched is gained by responding to the rear, south side of the building, entering the western most south facing door, ascending the stairwell to the second floor, immediately turn left at the top of the stairwell and enter the south facing door.[2]

Based on the information provided by Wells, the Judge approved the Search Warrant at 3:37 PM on January 19, 2023.

In the search warrant application, Wells sets forth the investigation. On January 10, 2023, officers of the Missouri Western Interdiction and Narcotics (MOWIN) Task Force conducted surveillance of 4801 Independence Avenue. Mr. Mangol is seen on 6th Street behind the apartment building getting into a grey sedan with a woman. He stays in the car for about 5 minutes. When he gets out of the car, he waves at a person in a Honda Civic that pulls up behind the grey sedan. Mr. Mangol walks to the apartment building and enters the back door of the building. A few minutes later, Mr. Mangol is seen coming out the same door. He walks back over to 6th Street where he enters three different cars for short periods of time.

MOWIN officers follow the Honda Civic and stop the car at Independence Avenue and Denver. At that location, they speak to the driver, Hayden Lawrence. Officers observe something protruding from his pants pocket. This item appears to be a crushed white pill that officers believe to be fentanyl.

---

[1] Attached as Exhibit A.
[2] Application for Search Warrant, Case Number KC23002048, dated January 19, 2023. (Bates 255)

Supplementing his observations on January 10, 2023, Wells asserts, "Members of the MOWIN Task Force conducted surveillance at 4801 Independence Avenue on numerous occasions in December of 2022 and January of 2023."[3] No specific dates are included in this general statement. He goes on to surmise that surveillance revealed a pattern in which Mr. Mangol would exit the apartment building, meet people on 6th Street, enter their car, exit the car, and return to the apartment building. The most recent observation of this "pattern" was January 17, 2023.

On January 26, 2023, seven days after the search warrant was signed, Wells and other officers prepared to execute the search warrant at 4801 Independence Avenue. As they surveilled the address, Mr. Mangol and Ms. House exited the building and entered a car. Officers conducted a car check and took both Mr. Mangol and Ms. House into custody. Mr.Mangol was transported to the police station and placed on a 24-hour investigation hold.

Meanwhile, law enforcement executed the search warrant at 4801 Independence Avenue and seized evidence including 17 blue "M30" pills; a draw string bag hanging near the dresser that contained over 100 unused plastic baggies; a Ruger, Model SR9, 9mm caliber pistol with Serial Number 33524231 loaded with 15 rounds of "Blazer 9mm Luger" ammunition in the magazine; a Springfield Armory, Model EP9, 9mm caliber pistol with Serial Number MG426887 loaded with 15 rounds of "Hornady 9mm Luger" ammunition the magazine; a bag of

---

[3] Exhibit A, pg. 1.

approximately 320 "M30" pills, suspected fentanyl; a plastic bag that contained three pistol magazines (one pistol magazine was empty, one contained 13 rounds of "Winchester 45 Auto" ammo, and one contained 12 rounds of "Blazer 9mm Luger"); and multiple boxes of ammunition.

ARGUMENTS & AUTHORITIES

I. The application for search warrant was insufficient and did not set forth probable cause to search the apartment at 4801 Independence Avenue, 2E, Kansas City, Missouri because officers failed to provide sufficient facts establishing illegal activity.

"The Fourth Amendment requires law enforcement to show probable cause, supported by oath or affirmation, before a search warrant is authorized." U.S. Const. Amend. IV.

> Probable cause "exists when, under the totality of the circumstances, there is a fair probability that evidence of a crime will be found in a particular place." *Id.* (cleaned up, citation omitted). A reviewing court is to give the issuing judge's probable-cause determination great deference, confirming only that the judge "had a substantial basis for concluding that a search would uncover evidence of wrongdoing." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)). Courts consider the totality of the circumstances to determine whether the affidavit supporting a warrant is enough to establish probable cause. *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009).

*United States v. Edwards*, No. 21-CR-255-1 (NEB/ECW), 2022 U.S. Dist. LEXIS 147795, at *3 (D. Minn. Aug. 18, 2022)

The application in this matter did not establish probable cause. The application fails to establish that Mr. Mangol possessed drugs or distributed drugs. The application did not contain any information from sources or reliable confidential informants that Mr. Mangol sold drugs to them. While Wells describes

4

observations of Mr. Mangol communicating with several people, none of those witnesses gave statements or information implicating him in drug transactions or drug activity. The application contains no corroboration of any speculation born from the surveillance.

On January 10, 2023, officers conducted a car stop of one of the individuals after they left the surveillance area. During this stop, officers observed a substance that appeared to be a crushed pill. Later testing indicated the pill contained fentanyl. The application fails to link the substance Hayden possessed to Mr. Mangol. Det. Wells does not include any statements by Hayden indicating that he bought the pill from Mr. Mangol. In fact, the application contains no statements from anyone indicating that Mr. Mangol sold fentanyl to them.

The only mentions of fentanyl are: (1) the test result of the substance Hayden possessed; and (2) the initial paragraph of the application. In the initial paragraph, Wells indicates that Mr. Mangol was "reportedly selling fentanyl from his apartment."[4] There is no indication who reported this or how Wells reached this supposition.

Included in the application is mention of Mr. Mangol's arrest in July 2020 — 29 months prior to the January 10, 2023, surveillance. This arrest purportedly resulted in the recovery of alprazolam and MDMA. There is no evidence that any fentanyl was recovered or contained in the items recovered. There is no indication that he was engaged in selling any of the substances recovered. Mr. Mangol was

---

[4] Exhibit A, pg. 1.

5

charged with possession of a controlled substance in Jackson County as a result of this arrest. Additionally, this arrest was more than two years prior to the investigation in this matter.

The application lacks specificity. The surveillance indicates some meetings with people in their cars. Wells concludes that these meetings are consistent with a hand-to-hand drug transaction; however, Wells fails to state how he concludes this and how he concludes that the alleged transactions involve fentanyl.

Finally, the application lacks any details connecting the observations to apartment 2E. Wells describes observing Mr. Mangol enter the "common door" leading to his apartment. This door leads to a stairwell, a large laundry area, and two apartments. The officers did not observe where Mr. Mangol went after he entered this door.

The issuing court must have a substantial basis for concluding that probable cause existed. *United States v. Juneau*, 73 F.4th 607, 614 (8th Cir. 2023).

> Although we have not adopted a per se rule to the effect that probable cause to arrest a drug trafficker establishes an inference that records, paraphernalia, and other evidence of drug trafficking exists at the trafficker's residence, we have found probable cause to exist in cases in which officers have stated that in their experience such an inference is appropriate and in which a supporting affidavit also described a defendant's continuous course of drug trafficking activity. See, e.g., *United States v. Luloff*, 15 F.3d 763, 768 (8th Cir. 1994).

*United States v. Ross*, 487 F.3d 1120, 1123 (8th Cir. 2007). This case, however, lacks: (1) the evidence of a continuous course of drug trafficking activity; and (2) a nexus between Mr. Mangol's alleged involvement in drug distribution and his home. Because of this, the application in this matter is lacking the corroboration

and specificity required to support probable case. *See United State v. Norey*, 31 F.4th 631 (8th Cir. 2022) (reliable confidential informant provided information coupled with surveillance, car stops resulting in the recovery of drugs, scales and money, and shooting at an address associated with defendant.); *United States v. Edwards* (defendant's course of drug trafficking described using informant statements that were corroborated, officer surveillance and GPS tracking); *United State v. Mayo*, 97 F.4th 552 (8th Cir. 2023) (recovered drugs and guns in vehicle, defendant associated with gun and vehicle by fingerprint, defendant stopped and found in possession of drugs, defendant's recorded phone call in the back of police vehicle).

In *United States v. Randle*, the District Court found probable cause lacking. *United States v. Randle*, No. 19-50 ADM/TNL, 2020 U.S. Dist. LEXIS 61014, at *10-11 (D. Minn. Apr. 7, 2020). The Court found that the affidavit, "comes close to, but does not quite reach establishing probable cause to search the Residence." *Id.* The Court also found the government's arguments about the meaning of the affidavit were logical; however, they required an inferential leap. But this inferential leap was not appropriate given the lack of information in the application establishing the nexus between contraband and the location searched. *Id.*

This case is similar to *Randle*. The probable cause statement in this case requires a few inferential leaps. The first leap is that Mangol was distributing drugs. The probable cause application infers that the police have information that Mangol was distributing drugs, but no evidence of drugs and no source claiming

7

they received drugs from him. The second leap is that drugs could be found in the apartment. The officers described observing Mangol enter a rear door that leads upstairs in the building. This stairwell leads to a laundry area and two apartments. While the search warrant application associated Mangol with one of the apartments, there is no statement about the second apartment or the laundry room area. The drugs could have been concealed in the laundry area or the other apartment. The police failed to establish the nexus with the specific apartment.

II. The Government cannot rely on exceptions to excluding evidence unconstitutionally obtained pursuant to *United States v. Leon*, 468 U.S. 897 (1984), because the affidavit in support of the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Williams*, 976 F.3d 807, (8th Cir. 2020) (quoting *Leon* 468 U.S. at 923).

The good faith exception to the exclusionary rule set forth in *Leon* is inapplicable: "(1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid." *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011).

In the present case, the application fails in all respects. The application is facially deficient such that no officer could reasonably presume the warrant to be

8

valid. The need for corroborating information and for evidence establishing illegal activity are basic elements of the warrant requirement. The warrant lacks the necessary indicia of probable cause and reliance on this application is entirely unreasonable. If additional evidence, statements, or corroboration was available, Wells omitted this from the application. If this is the case, then the application supporting the warrant contained an omission made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge. Finally, the application is so lacking in probable cause, that the review in this matter by the judiciary was abandoned.

III. Any statements made by Mr. Mangol were coerced and in violation of the Fifth Amendment of the United States Constitution and are fruit of the poisonous tree. *Wong Sun v. United States*, 371 US 471 (1963).

Evidence will be considered "fruit of the poisonous tree" after a violation has occurred, unless law enforcement can show that the evidence was obtained "by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). The Court in *Wong Sun* discussed the danger of failing to suppress evidence when no reasonable suspicion or probable cause is present:

> A contrary holding here would mean that a vague suspicion could be transformed into probable cause for arrest by reason of ambiguous conduct which the arresting officers themselves have provoked. Cf. *Henry v. United States*, 361 U. S. 98, 104. That result would have the same essential vice as a proposition we have consistently rejected—that a search unlawful at its inception may be validated by what it turns up. *Byars v. United States*, 273 U. S. 28; *United States v. Di Re*, 332 U. S. 581, 595.

Without the requisite probable cause, the search warrant would not have issued, and the subsequent incriminating evidence would not have been obtained. There was no independent evidence to support the information garnered from Mr. Mangol's illegally obtained incriminating statements. See *Segura v. United States*, 468 U.S. 796, 813-14 (1984). Without an independent source, so as to distinguish the unlawfully obtained incriminating statements from the probable cause necessary for the Search Warrant, the warrant, and the evidence obtained therefrom were unlawful as well including the statement, the two iPhones seized from Mr. Mangol as well as the currency seized.

Because law enforcement did not have reasonable suspicion or probable cause to stop or arrest or search his apartment, the evidence was obtained in violation of Mr. Mangol's rights to be free from unreasonable search and seizure, to due process of law, to remain silent, and to counsel as guaranteed to him by the Fourth, Fifth and Sixth Amendments to the United States Constitution.

CONCLUSION

Mr. Mangol's Fourth Amendment rights were violated when officers conducted an unreasonable search of his apartment and seized several items of evidence. This search was not supported by probable cause and does not fall within the good-faith exception to the exclusionary rule. Therefore, Mr. Mangol requests this Court to suppress all evidence relating to this illegal search and seizure on January 26, 2023, to suppress any subsequent statements and evidence seized from Mr. Mangol, and for whatever relief this Court deems just and proper.

Respectfully Submitted,

SANDAGE LAW LLC


/s/ Laura O'Sullivan
Laura O'Sullivan, MO #41318
1600 Genessee Street, Suite 662
Kansas City, MO 64102
phone 816.753.0800
fax 816.735.4602
email laura@sandagelaw.com

ATTORNEY FOR DEFENDANT

**CERTIFICATE OF SERVICE**

On December 23, 2024, I served this document by depositing an electronic copy of it in the Court's electronic filing system, which shall distribute notice to all attorneys of record.


/ s/ Laura O'Sullivan
Laura O'Sullivan